# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DANIEL RODRIGUEZ QUINTERO,

Plaintiff,

v.

TRISTAN LEMON, et al.,

Defendants.

Case No. 1:23-cv-01196-BAM (PC)

ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION

FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS

(ECF No. 25)

**FOURTEEN (14) DAY DEADLINE**

## I. Background

Plaintiff Daniel Rodriguez Quintero ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. The matter was transferred to the Fresno Division of this Court on August 11, 2023. (ECF No. 4.)

On October 24, 2025, the Court screened Plaintiff's complaint and granted him leave to file a first amended complaint. (ECF No. 13.) On January 15, 2026, following extensions of time, Plaintiff filed a first amended complaint, along with a petition for an ancillary support device with artificial intelligence. (ECF No. 18.) On July 15, 2026, the Court denied Plaintiff's petition for an ancillary support device, declined to screen Plaintiff's first amended complaint because it alleged new and different claims against new and different defendants, and granted

Plaintiff a final opportunity to amend his complaint. (ECF No. 19.) On July 27, 2026, Plaintiff filed a second amended complaint. (ECF No. 21.) On July 30, 2026, because Plaintiff's first and second amended complaints were duplicative, the Court declined to screen the second amended complaint. (ECF No. 22.) The Court granted Plaintiff an extension of time to file a third amended complaint. (*Id.*) Plaintiff's third amended complaint, filed on August 31, 2026, is currently before the Court for screening. (ECF No. 25.)

**II. Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b); 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**III. Plaintiff's Allegations**

Plaintiff is currently housed at the California Health Care Facility in Stockton, California.

The events in the third amended complaint are alleged to have occurred while Plaintiff was housed at Pleasant Valley State Prison ("PVSP") in Coalinga, California. Plaintiff names the following defendants: (1) Warden Lemon; (2) Lt. J. Doe 1; (3) J. Doe 2; (4) Sgt. Mike, (5) Oxborrow; (6) J. Doe 1; (7) J. Doe 2; (8) Pineda; (9) Leon; (10) Gutierrez; (11) Lopez; (12) J. Doe; and (13) Jane Doe. Plaintiff includes multiple illustrations in support of his amended complaint. (*See* ECF No. 25 at 9-12.)

As background, Plaintiff alleges: In 2021-2022, Warden Lemon implemented a facility regulation to stop custody staff from reactivating cell electrical breakers. Plaintiff was informed multiple times by yard lieutenants, sergeants, correctional officers, and other inmates. Lemon's breaker policy was in response to custody claims of safety concerns of an electrical breaker being dangerous. Lemon had a duty to provide inmates with flushable toilets and proper sanitation 24 hours a day. The demand for higher safety standards after decades of safe breaker activation by custody was not an exigent facility need. A circuit breaker is inherently a safety device certified to be safe to use without any special training in electrical engineering. Plaintiff claims the regulation is illegal from inception. Custody supervisors and staff could not reasonably believe that leaving a person in a cell with shockingly unsanitary conditions was legal. The staff immediately said Lemon gave the order to deflect responsibility. Lemon, custody supervisors, and staff have no legal justification to deny sanitary conditions based on legitimate governmental interest of protecting staff from electrical shock from operating a safety device designed to prevent electric shock.

Plaintiff every day showed staff and approached supervisors regarding the shockingly unsanitary conditions in the cell, the high temperature, lack of fan, pre-existing medical conditions and current medical issues caused by the conditions. Plaintiff was denied help every day for over 30 days. The staff could not reasonably conclude that under the extreme circumstances that Lemon's order was constitutionally permissible to keep for several continuous days in such deplorably unsanitary cell.

Lemon, custody supervisors, and staff claim that to prevent custody exposure to electrical shock is sufficiently compelling, exigent and necessary to justify the policy. No mitigations were

provided to reduce the time Plaintiff was exposed to the shockingly unsanitary conditions for 13 continuous days, totaling over 30. Every named defendant personally witnessed the cell conditions (with Lemon's exception) and were deliberately indifferent to the shockingly unsanitary conditions. At one point, Sgt. Mike was so frustrated with Plaintiff that Sgt. Mike told Gutierrez, Pineda, and Lopez to turn the power on. The staff refused the order and said the officer's labor union had to be involved. Sgt. Mike told Plaintff, "see they won't do it, I [definitely] won't do it." (ECF No. 25 at 7.) The issue being that neither staff were being paid to do electrical labor, and that Plaintiff needed to sue Lemon so that staff could get paid for electrical labor for each cell they "Repaired." (*Id.*) Plaintiff told Sgt. Mike repeatedly it was their job to provide sanitary conditions and a working toilet. This was repeated by other staff, that the issue was between union and Lemon and had nothing to do with exigent dangerous conditions. Plaintiff was subjected to shockingly unsanitary conditions by each staff member's personal choice to force Lemon into some type of deal. Plaintiff contends that all defendants are personally liable and knowingly violated Plaintiff's constitutional rights with the unreasonable expectation that Lemon would be the only one liable for creating the policy. Plaintiff alleges that "[c]ustody supervisors and staff knowingly violated a clearly established constitutional right of adequate sanitation that any reasonable person would have known Lemon's directive is unconstitutional and enforcing it in order to drive civil claims against Lemon constitutes a violation . . . . " (*Id.* at 8.)

Plaintiff further alleges that all defendants failed to act when they were legally required to when they personally physically witnessed the shockingly unsanitary conditions, subjecting Plaintiff to wanton infliction of physical and emotional pain for 13 consecutive days and totaling 30 days. Plaintiff suffered severe diarrhea, vomiting, headaches, fever, body aches, lack of sleep, suicidal thoughts, planning, ideas, homicidal, constant negative voice, delirium, fume intoxication, heat body aches and headaches, along with lasting emotional trauma causing severe panic attacks, disorientation, nightmares, and constant fear.

In Claim One, Plaintiff asserts a violation of the Eighth Amendment against Defendants Lopez, Pineda, Leon, Gutierrez, J. Doe, and Jane Doe. Plaintiff alleges: On July 4, 2022,

Plaintiff accidentally triggered the cell's electrical breaker. The breaker controls the electrical toilet. The toilet flush valve cannot open without power provided by the electrical valve. The overflow small valve can only allow water to pass, no solid. Plaintiff informed custody staff immediately and also filed a maintenance request for E.R. service. After 72 hours of solid waste had accumulated in the toilet, Plaintiff showed Lopez, Pineda, Leon, Gutierrez, J. Doe, and Jane Doe the shockingly unsanitary conditions of confinement. Solid waste was above water level, the temperature inside the cell was over 100º making the intoxicating fumes unbearable, physically and mentally painful. The cell door, by policy, had to remain closed at all times, stifling with intoxicating fumes. Plaintiff showed custody and asked for help at every shift change, safety walk, nurse pill line walk, and every chance to show custody. Plaintiff was involved in multiple verbal arguments with custody who saw the shockingly unsanitary conditions and refused to activate the breaker. The breaker was 4 feet from Plaintiff's cell door, accessible by custody with a key attached to their key ring. Custody said they could only open that door to clean, turn water off/on. Custody said every time Plaintiff asked for help, "Warden Lemon issued an Order to specifically NOT to reactivate breaker when triggered, that [maintenance] was the only staff AUTHORIZED to reactivate cell electrical breaker." (*Id.* at 13.) Custody would witness the shockingly unsanitary conditions and deny any relief. For 13 consecutive days, Plaintiff suffered physical and emotional pain.

In Claim Two, Plaintiff asserts a violation of the Eighth Amendment against supervisory custody staff, Sgt. Mike, Oxborrow, and John Doe. Plaintiff alleges that after 24 of activating the electrical breaker, Plaintiff requested a sergeant. After the sergeant witnessed the shockingly unsanitary condition, having custody staff with keys for the door 4 feet away where the electrical breaker is, the sergeants denied any relief. After 48 hours, Plaintiff was involved in another petition with Sgt. Mike and Oxborrow. They denied any relief, saying, "Warden Lemon gave an order authorizing [maintenance] staff ONLY to activate breaker." (*Id.* at 14.) To continue to use water and hands to dissolve solids and get them to go into overflow valve. After 72 hours, Plaintiff was involved in another petition with Sgt. Mike, who told Plaintiff the only help he could get was: A) go to SHU; B) go suicidal; C) go to block 5 with active, D) pick a cell to go, he

could move those inmates to Plaintiff's cell and Plaintiff to their cell. Plaintiff was only given violent options. Plaintiff requested to speak to a yard Lieutenant. He was told there was no need since the Warden had given the order. The sergeants allowed the shockingly unsanitary conditions and denied any reasonable relief. Plaintiff suffered the unnecessary and wanton infliction of physical and emotional pain. Plaintiff's cell was next to the only shower on section, making the shared steam, hotter temperature, humidity another cause affecting the cell's shockingly unsanitary conditions. The multiple sergeants involved in the initial 13 days were personally informed by Plaintiff, witnessed the shockingly unsanitary conditions, failed to act and promulgated Warden Lemon's unconstitutional order resulting in constitutional violation. The multiple interactions are on video and audio. Each sergeant can be heard quoting Lemon's order.

In Claim Three, Plaintiff asserts a violation of the Eighth Amendment against Warden Lemon. Plaintiff alleges Lemon enacted a policy that took away the authority of custody staff and custody supervisors to reactivate cell electrical breaker that controlled the electrical toilet and two electrical outlets. Lemon's order gave authority to maintenance staff only. Plaintiff petitioned for a copy of the policy, but it was denied. Plaintiff was told the policy existed by yard lieutenants, sergeants, and custody staff that were aware of Plaintiff's shockingly unsanitary condition. Plaintiff filed an appeal challenging the policy, and it was granted. The multiple appeal response did not deny the existence of the policy. Plaintiff claims Warden Lemon's policy is or was deficient, a repudiation of Plaintiff's constitutional rights and the moving force of the constitutional violation. Lemon was aware maintenance could not respond to every cell breaker activation immediately or within reasonable time. Plaintiff's cell being next to shower and with known electrical issues had 4-5 breaker activations in 2022. The maintenance request response was from 3 days to the longest being 13 days. Plaintiff asserts that the toilet valve will not open without power, a bucket of water would slowly drain liquids not solids via overflow valve. Lemon was aware PVSP has a swamp cooling air system that does not effectively cool a cell and the electrical fans that are 10-13 inches only help a minimal amount. Lemon knows "A" yard is a level 3-4 yard, where doors remain closed 24 hours. Lemon was aware that in 2022, Covid-19 lockdowns were being practiced frequently and would result in no shower but every 48-72 hours,

meals being served in cell, no inmate movement, and doors to remain locked for multiple days, no yard, no school, no programs, etc. Lemon's directive was the causal link in the constitutional violation suffered by Plaintiff while in his custody. Plaintiff gave Lemon notice of violation via administrative appeal process and Lemon once put on notice failed to prevent and issue new directives. Plaintiff wrote to the Warden's office, spoke to inmate council, and multiple supervisors. Lemon did not remove the policy. "The maintenance staff also agreed the order was deficient since they were really busy to stop for a breaker." (ECF No. 25 at 16.) Plaintiff was in the process of having several inmates file similar appeals when Sgt. Mike ordered Plaintiff's move to the active building, where Plaintiff was physically and sexually assaulted. Plaintiff was removed from PVSP due to medical conditions caused at PVSP. Plaintiff's property was destroyed during the move in retaliation for appeals against Lemon. Lemon denied adequate sanitation.

In Claim Four, Plaintiff asserts a violation of his First Amendment right to practice Islam. Plaintiff alleges that defendants' substantial burden of not providing Plaintiff with a flushing toilet effectively forced Plaintiff to stop the five daily prayers, reading of Quran, and other religious activities. For 13 consecutive days and 30 total days, defendants refused to reset the breaker to flush the toilet. "The great accumulation of feces and urine made any of [Plaintiff's] religious obligations not being able to perform." (*Id.* at 17.) All Islam obligations required an area free of feces and urine. Lemon created an unconstitutional policy that a personally promulgated by each defendant's lack of action to rectify shockingly unsanitary conditions caused by Lemon's policy. Plaintiff was locked down in the cell and was not allowed to come out for 13 consecutive days, totaling 30, to perform 5 daily prayers in an area without feces and urine. Plaintiff could not perform 150 prayers, 60 Quran prayers, 1,500 supplications after prayer.

As relief, Plaintiff seeks monetary damages, certification for a class action, and injunctive relief if the policy is still in place. He also seeks limited discovery.

///

///

**IV. Discussion**

**A. Federal Rule of Civil Procedure 8**

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–557.

Plaintiff's complaint is not a short and plain statement of his claims. Plaintiff fails to clearly and concisely state what happened, when it happened, and who was involved. Plaintiff's allegations are repetitive and conclusory. As discussed below, Plaintiff lumps many of the defendants together, making it difficult for the Court to conclude that Plaintiff states a cognizable claim against each of the named defendants. Plaintiff also includes unnecessary legal argument and case citations.

**B. Linkage Requirement**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff's complaint fails to adequately link multiple defendants to a specific act or omission that violated Plaintiff's rights. Plaintiff names J. Doe 1 and J. Doe 2 (twice) as defendants, but he fails to include them in any of his factual allegations. It is unclear how many different Doe defendants Plaintiff is attempting to include in his allegations. Plaintiff's general reference to "staff," "supervisor", or sergeants is not sufficient.

**C. Eighth Amendment – Conditions of Confinement**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference . . ." *Labatad v. Corr. Corp. of Amer.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. The more basic the need, the shorter the time it can be withheld. *See Johnson*, 217 F.3d at 731. Substantial deprivations of shelter, food, drinking water or sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See id.* at 732-733; *see*, *e.g.*, *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005) (allegations of serious health hazards in disciplinary segregation yard for a period of nine months, including toilets that did not work,

sinks that were rusted and stagnant pools of water infested with insects, and a lack of cold water even though the temperature in the prison yard exceeded 100 degrees, enough to state a claim of unconstitutional prison conditions); *Anderson*, 45 F.3d at 1314 ("[A] lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."). Further, it is axiomatic that a prison official's failure to provide inmates relief from extreme temperatures may constitute an Eighth Amendment violation. *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) ("low cell temperature at night combined with a failure to issue blankets" could constitute an Eighth Amendment violation); *Graves v. Arpaio*, 623 F.3d 1043, 1049 (9th Cir. 2010) ("The district court did not err ... in concluding that dangerously high temperatures that pose a significant risk to detainee health violate the Eighth Amendment."); *Chandler v. Crosby*, 379 F.3d 1278, 1294 (11th Cir. 2004) ("[T]he Eighth Amendment applies to prisoner claims of inadequate cooling and ventilation.").

Liberally construed, Plaintiff states a cognizable Eighth Amendment conditions of confinement claim against Defendants Lopez, Pineda, Leon, Gutierrez, J. Doe, Jane Doe, Sgt. Mike, and Oxborrow. However, Plaintiff fails to state a cognizable Eighth Amendment claim against any of the other Doe defendants because he fails to link them to the allegations of his complaint. As indicated, Plaintiff may not simply lump defendants together to state a claim. Instead, he must allege what each individual defendant did or did not do that resulted in a deprivation of his rights.

Further, Plaintiff does not state a cognizable Eighth Amendment conditions of confinement claim against Defendant Lemon. Plaintiff does not adequately allege that Defendant Lemon knew of and disregarded an excessive risk to Plaintiff's health or safety. Indeed, Plaintiff admits Defendant Lemon did not personally witness the cell conditions. (*See* ECF No. 25 at 7.) Plaintiff asserts that Defendant Lemon knew of the conditions because Plaintiff submitted an administrative appeal, wrote to the Warden's office, and spoke to the inmate council and numerous supervisors. However, these allegations are not sufficient to demonstrate Defendant Lemon knew of the conditions of Plaintiff's cell. Plaintiff's conclusory assertions and supposition are not sufficient to state a cognizable claim.

Plaintiff may be seeking to impose supervisory liability against Defendants Lemon. However, liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir.2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

Plaintiff does not adequately allege that Defendant Lemon participated in or directed any of the alleged violations. Plaintiff admits Defendant Lemon did not witness the cell conditions. Plaintiff attempts to allege that Defendant Lemon's policy of requiring maintenance staff to reset electrical breakers was deficient and the moving force of the constitutional violation. However, the factual allegations implicate the delay in maintenance staff resetting the electrical breaker for Plaintiff's cell, not the policy designating maintenance staff for such work.

**D. First Amendment – Religion**

A plaintiff asserting a free exercise claim must show that the defendant's actions substantially burden his practice of religion. *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). "A substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (internal quotation marks and citations omitted). "[A] prison policy that intentionally puts significant pressure on inmates ... to abandon their religious beliefs ... imposes a substantial burden on [the inmate's] religious practice." *Shakur v. Schriro*, 514 F.3d 878, 889 (9th Cir. 2008) (internal

quotation marks and citation omitted).

To state a claim under the Free Exercise Clause, an inmate must plausibly allege that a prison official's actions (a) "substantially burden[ed]" the inmate's exercise of a sincerely-held religious belief; and (b) did so in an unreasonable manner—i.e., the official's actions were not "rationally related to legitimate penological interests." *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348–50 (1987); *Jones,* 791 F.3d at 1031, 1033; *see also Johnson v. Nugent*, No. 1:24-cv-00949-JLT-BAM (PC), 2025 WL 1167840, at *3 (E.D. Cal. Apr. 21, 2025), report and recommendation adopted, No. 1:24-cv-00949 JLT BAM (PC), 2025 WL 1433834 (E.D. Cal. May 19, 2025).

Plaintiff does not adequately allege that prison officials substantially burdened his exercise of a sincerely held religious belief. It is not evident how the temporary absence of a flushing toilet effectively forced Plaintiff to stop his prayers or reading of the Quran. Plaintiff's reference to other religious activities also is too vague to support a claim. Even if the allegations are sufficient to allege a substantial burden, Plaintiff fails to allege which defendants knew of the burden to his religious beliefs. Plaintiff merely lumps defendants together without alleging which defendant knew what about his religious beliefs.

**E. RLUIPA**

A prisoner's ability to freely exercise his religion is also protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . unless the government demonstrates that imposition of the burden on that person . . . is in furtherance of a compelling governmental interest . . . and is the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1124 (9th Cir. 2013); 42 U.S.C. § 2000cc-5(7).

Money damages are not available under RLUIPA against the state or state officials sued in their official capacities, *Sossamon v. Texas*, 563 U.S. 277, 279 (2011), and RLUIPA does not

contemplate liability of government employees in their individual capacity, *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014). Thus, a RLUIPA claim may proceed only for declaratory or injunctive relief against defendants acting within their official capacities. *See Jones*, 791 F.3d at 1031 ("RLUIPA does not authorize suits for damages against state officials in their individual capacities because individual state officials are not recipients of federal funding and nothing in the statute suggests any congressional intent to hold them individually liable."). The proper defendant for a RLUIPA claim is the official who could appropriately respond to a court order on injunctive relief should one ever be issued. *See id*.

Because only injunctive relief is available under RLUIPA, and Plaintiff is no longer subject to the offending conduct because at the time he filed the complaint he had been transferred to Mule Creek State Prison, and is now housed at California Health Care Facility, any RLUIPA claims appear to be moot. *See Jones*, 791 F.3d at 1031; *Jackson v. Sullivan*, 692 F. App'x 437, 439-40 (9th Cir. 2017) (transferred inmate's RLUIPA claims moot where he had not alleged any adverse consequences at his new facility and the offending conduct was unlikely to continue even if he were to be transferred back). Plaintiff does not allege that he expects to be transferred back to Pleasant Valley State Prison, and the conditions complained of were temporary, resulting from a power outage in July 2022.

For these reasons, Plaintiff may not maintain a claim for injunctive relief or damages under RLUIPA.

**F. Class Action**

Plaintiff appears to seek certification for a class action. However, Plaintiff is a non-lawyer proceeding without counsel. It is well-established that a layperson cannot ordinarily represent the interests of a class. *See McShane v. United States*, 366 F.2d 286 (9th Cir. 1966). This rule becomes almost absolute when, as here, the putative class representative is incarcerated and proceeding pro se. *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975). In direct terms, Plaintiff cannot "fairly and adequately protect the interests of the class," as required by Rule 23(a)(4) of the Federal Rules of Civil Procedure. *See Martin v. Middendorf*, 420 F. Supp. 779 (D.D.C. 1976).

**G. Injunctive Relief**

As noted, insofar as Plaintiff seeks injunctive relief, any such request is now moot. Plaintiff is no longer housed at PVSP, where he alleges the incident at issue occurred. Therefore, any injunctive relief he seeks against the officials at PVSP is moot. *See Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (prisoner's claims for injunctive relief generally become moot upon transfer) (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]")).

**V. Conclusion and Recommendation**

Based on the above, the Court finds that Plaintiff's third amended complaint states a cognizable Eighth Amendment conditions of confinement claim against Defendants Lopez, Pineda, Leon, Gutierrez, J. Doe, Jane Doe, Sgt. Mike, and Oxborrow. However, Plaintiff's third amended complaint fails to state any other cognizable claims for relief against any other defendant. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the deficiencies. Further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a District Judge to this action.

Furthermore, it is HEREBY RECOMMENDED that:

1. This action proceed against Defendants Lopez, Pineda, Leon, Gutierrez, J. Doe, Jane Doe, Sgt. Mike, and Oxborrow for unconstitutional conditions of confinement in violation of the Eighth Amendment.
2. All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may

file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections.** Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 7, 2026**

/s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE